**Gilberto BATISTA–RIVERA, Plaintiff**

**v.**

**Gladys GONZÁLEZ, et al., Defendants.**

**Civil No. 02–2874(GAG/MEL).**

United States District Court,
D. Puerto Rico.

Nov. 28, 2007.

Francisco R. Gonzalez–Colon, Francisco J. Gonzalez–Magaz, F.R. Gonzalez Law Office, San Juan, PR, for Plaintiff.

Iris Alicia Martinez–Juarbe, Valerie Maldonado–Rivera, Department of Justice, Javier I. Arbona, Quinones, Sanchez & Guzman, PSC, Felix M. Roman–Carrasquillo, San Juan, PR, for Defendants.

## OPINION AND ORDER

MARCOS E. LÓPEZ, United States Magistrate Judge.

Before the court is plaintiff's "Petition for an Award of Attorney's Fees and

Memorandum in Support Thereof", as well as the opposition filed by co-defendant Rafael Martínez. Docket Nos. 125 and 128. For the following reasons the Court GRANTS the petition for attorney's fees, but reduces the amount requested.

## I. Background

On December 31, 2002, plaintiff Gilberto Batista–Rivera ("Batista") filed this civil rights action under 42 U.S.C. § 1983 ("Section 1983") against Gladys Conzález, Rafael Martínez and Esteban Mujica, claiming that said co-defendants subjected him to adverse personnel actions in his employment because of his political affiliation. Docket No. 1.[1] The matter culminated in a five-day jury trial. Docket Nos. 111–16.

At the close of plaintiff's case-in-chief, defendants moved for judgment as a matter of law pursuant to Federal Rule 50(a) of Civil Procedure. Docket No. 112. The court granted said motion as to co-defendant Gladys González, but held it in abeyance as to co-defendant Rafael Martínez. Docket Nos. 113, 114. At the close of all the evidence, co-defendant Rafael Martínez again moved for judgment as a matter of law under Rule 50(a), but the court held it in abeyance again. Docket No. 115. On August 3, 2007, the jury returned a verdict in favor of plaintiff for $2,400.00 for compensatory and economic damages. Subsequently, the court denied co-defendant Rafael Martínez's Rule 50(a) motion held in abeyance. Docket No. 116.

Plaintiff now seeks attorney's fees in the amount of $52,262.50. Docket No. 125.

On October 2, 2007, co-defendant Rafael Martínez opposed plaintiff's request on several grounds. He essentially alleges that the amount of damages awarded by the jury should determine the amount of attorney's fees granted. In particular, he asserts that insofar Batista only achieved partial or limited success and insofar the amount awarded by the jury as compensation for plaintiff's damages is only "nominal", the attorney's fees requested by plaintiff should be reduced or not awarded at all. Furthermore, co-defendant Rafael Martínez claims that no special skills were involved in the case at bar and that the amount of work as reported in the time sheets submitted by plaintiff's attorneys is excessive. Docket No. 128. Plaintiff replied on October 4, 2007. Docket No. 129.

Upon reviewing the parties' motions, the court GRANTS plaintiff's motion and awards attorney's fees as follows.

## II. Discussion

### A. Attorney Fees

"Congress enacted the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 ['Section 1988'], authorizing the district courts to award a reasonable attorney's fee to prevailing parties in civil rights litigation." *Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). "The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances." Id. Therefore, in any action enforcing the provisions of Section 1983, such as the instant one, attorney's fees awards are governed by Section 1988.[2]

---

**1.** The plaintiff works as Maintenance Supervisor of the General Services Division of the Environmental Quality Board ("EQB") of the Commonwealth of Puerto Rico ("Junta de Calidad Ambiental" in Spanish). At the time the events giving rise to this case occurred, co-defendant Gladys González was the President of the EQB and codefendant Rafael Mar-

tínez was the Interim Director of the General Services Division at the EQB. On September 24, 2004, the court dismissed with prejudice all the claims asserted against co-defendant Estaban Mujica. Docket Nos. 27, 28.

**2.** Section 1983 provides, in relevant part, that:

Section 1988(b) states that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Notwithstanding the discretionary language of the statute, "[i]n civil rights cases, fee-shifting in favor of a prevailing plaintiff is the rule, whereas fee-shifting in favor of a prevailing defendant is the exception." *Casa Marie Hogar Geriátrico, Inc. v. Rivera–Santos*, 38 F.3d 615, 618 (1st Cir. 1994). Both the legislative history and case law since the enactment of Section 1988 indicate that fees should be awarded to successful plaintiffs absent unusual circumstances. *Williams v. Hanover Housing Authority*, 113 F.3d 1294, 1300 (1st Cir.1997) (citations omitted).

In adjudicating a request for attorney's fees, the court needs to determine whether: (1) a party is in fact a "prevailing party"; (2) the compensation sought is reasonable (*i.e.* calculation of the lodestar); and (3) there are any additional but exceptional considerations that may require to adjust upward or downward. *See Hensley*, 461 U.S. at 433–34, 103 S.Ct. 1933. "A plaintiff is a prevailing party if he has succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit.' " *Rosario–Urdaz v. Rivera–Hernández*, 451 F.Supp.2d 305, 308 (D.P.R.2006)(*citing Texas State Teachers Assoc. v. Garland*

*Indep. School District*, 489 U.S. 782, 791–92, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)). Once plaintiff comes across this threshold, the district court must then determine what fee is reasonable. *See Hensley*, 461 U.S. at 433, 103 S.Ct. 1933.

To determine the amount of attorney's fees courts in this Circuit must apply the "lodestar" approach which requires that the Court calculate first the prevailing hourly rate, and second, the time spent performing the various legal tasks, subtracting those which are excessive, duplicative, or unnecessary. *Tejada–Batista v. Fuentes–Agostini*, 263 F.Supp.2d 321, 326–27 (D.P.R.2003); *see also Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 295 (1st Cir.2001); *Bogan v. City of Boston*, 489 F.3d 417, 426–27 (1st Cir.2007). A court usually should begin with the attorneys' contemporaneous billing records. *Gay Officers Action League*, 247 F.3d at 295. The court should then subtract hours that are duplicative, unproductive or excessive and multiply the reasonable hours billed by the prevailing attorney rate in the community. *Id.; see also Lipsett v. Blanco*, 975 F.2d 934, 937 (1st Cir.1992).

Nevertheless, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward ..." *Hensley*, 461 U.S. at 434, 103

---

Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...

42 U.S.C. § 1983. Section 1988 provides, in pertinent part, that:

In any action or proceeding to enforce a provision of section[] ... 1983 ..., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

42 U.S.C. § 1988.

S.Ct. 1933. The court may adjust the award further for several reasons, such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney(s) due to acceptance of the case; (5) the customary fee; (6) the nature of the fee (fixed or contingent); (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney(s); (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) the size of awards in similar cases. *See Blanchard v. Bergeron*, 489 U.S. 87, 92 n. 5, 109 S.Ct. 939, 103 L.Ed.2d 67 (*citing Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir.1974)); *see also Hensley*, 461 U.S. at 434 n. 9, 103 S.Ct. 1933, *Coutin v. Young & Rubicam Puerto Rico, Inc.*, 124 F.3d 331, 337 n. 3 (1st Cir.1997).

■ Finally, in order to receive the proper award of attorney fees, a prevailing party must submit with its motion evidence to support the number of hours and rates sought, and show that the rates being sought are comparable to those in the community. *See Hensley*, 461 U.S. at 433, 103 S.Ct. 1933.

### 1. Co-defendant Rafael Martínez's arguments in opposition to the request for attorney's fees.

■ In his opposition to plaintiff's request for attorney's fees, co-defendant Rafael Martínez asserts that the amount of attorney's fees sought by plaintiff should be determined by and be proportional to the amount of damages awarded by the jury. According to Martínez, since Batista only achieved partial or limited success and the jury only awarded him "nominal damages", the attorney's fees requested by plaintiff should be reduced or not awarded at all. Martínez relies on *City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) and *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), to support his contentions. Docket No. 128. Said reliance is misplaced.

*Riverside* is the leading case on the issue of whether the attorney's fees should be proportional to the damages recovered by a plaintiff. The plaintiffs in *Riverside* were awarded $33,350 in damages, where the jury found violations of Section 1983, instances of false arrest and imprisonment, and neglect. They sought attorney's fees under Section 1988, and were awarded $245,456.25 by the district court. Despite the disparity, the Supreme Court affirmed the award of attorney's fees in a plurality opinion and rejected a rule of proportionality for attorney's fees under Section 1988. First, the Court noted that:

> The amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded under [Section 1988]. It is, however, only one of many factors that a court should consider in calculating an award of attorney's fees. We reject the proposition that fee awards under [Section 1988] should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers.

*Riverside*, 477 U.S. at 574, 106 S.Ct. 2686 (citation omitted).[3] Then, the Court expressed that:

---

**3.** To reach this conclusion, the Court explained that "a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms. And, Congress has determined that the 'public as a whole has an interest in

A rule that limits attorney's fees in civil rights cases to a proportion of the damages awarded would seriously undermine Congress' purpose in enacting § 1988. Congress enacted [Section 1988] specifically because it found that the private market for legal services failed to provide many victims of civil rights violations with effective access to the judicial process.

. . . . .

A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts. This is totally inconsistent with Congress' purpose in enacting [Section 1988]. Congress recognized that private-sector fee arrangements were inadequate to ensure sufficiently vigorous enforcement of civil rights. In order to ensure that lawyers would be willing to represent persons with legitimate civil rights grievances, Congress determined that it would be necessary to compensate lawyers for all time reasonably expended on a case.

*Id.*, at 576, 578, 106 S.Ct. 2686.

Similarly, *Farrar* does not support Martínez's claims that the attorney's fees sought by plaintiff should be reduced or not awarded at all since Batista only recovered "nominal damages". The plaintiff in *Farrar* had owned and operated a private school for delinquent, disabled, and disturbed teens. After a student died at the school, the plaintiff was indicted with charges of willful failure to administer proper medical treatment and failure to

provide timely hospitalization. The State of Texas also obtained a temporary injunction closing the school. The plaintiff then brought an action pursuant to Section 1983 alleging deprivation of liberty and property without due process by means of conspiracy and malicious prosecution aimed at closing plaintiff's school and requesting seventeen million dollars in damages. A jury eventually found that five of the six named defendants had conspired against the plaintiff but that said conspiracy was not the proximate cause of the injury suffered by the plaintiff. The plaintiff was therefore awarded nominal damages of one dollar. The district court awarded the plaintiff $280,000 in attorney's fees. Defendants appealed to the Fifth Circuit Court of Appeals and the fee award was reversed by said court. *Farrar*, 506 U.S. at 105–07, 113 S.Ct. 566.

The Supreme Court affirmed the reversal of the fee award. In doing so, the Supreme Court first held that a plaintiff who wins nominal damages is a prevailing party under Section 1988. The prevailing party inquiry does not turn on the magnitude of the relief obtained, and whether a nominal damages award is a "technical," "insignificant" victory does not affect the plaintiff's prevailing party status. Id., at 112–14. However, even though "the 'technical' nature of a nominal damages award does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under § 1988." Id., at 114. The Court further explained that:

> In some circumstances, even a plaintiff who formally "prevails" under § 1988 should receive no attorney's fees

the vindication of the rights conferred by statutes enumerated in [Section 1988], over and above the value of a civil rights remedy to a particular plaintiff.' " *Riverside*, 477 U.S. at 574, 106 S.Ct. 2686 (citations omitted). "Because damages awards do not reflect fully the

public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief." *Id.*, at 575, 106 S.Ct. 2686.

at all. A plaintiff who seeks compensatory damages but receives no more than nominal damages is often such a prevailing party. As we have held, a nominal damages award does render a plaintiff a prevailing party by allowing him to vindicate his "absolute" right to procedural due process through enforcement of a judgment against the defendant. *Carey*, 435 U.S., at 266, 98 S.Ct., at 1053. In a civil rights suit for damages, however, the awarding of nominal damages also highlights the plaintiff's failure to prove actual, compensable injury. *Id.*, at 254–264, 98 S.Ct., at 1047–1052. Whatever the constitutional basis for substantive liability, damages awarded in a § 1983 action "must always be designed 'to compensate injuries caused by the [constitutional] deprivation.'" *Memphis Community School Dist. v. Stachura*, 477 U.S., at 309, 106 S.Ct., at 2544 (*quoting Carey, supra*, 435 U.S., at 265, 98 S.Ct., at 1053) (emphasis and brackets in original). When a plaintiff recovers only nominal damages *because of his failure to prove an essential element of his claim* for monetary relief, *see Carey, supra*, at 256–257, 264, 98 S.Ct., at 1048–1049, 1052, the only reasonable fee is usually no fee at all. In an apparent failure to heed our admonition that fee awards under § 1988 were never intended to 'produce windfalls to attorneys,' *Riverside v. Rivera, supra*, 477 U.S., at 580, 106 S.Ct., at 2697 (plurality opinion) (*quoting* S.Rep. No. 94–1011, p. 6 (1976) U.S.Code Cong. & Admin.News 1976 pp. 5908, 5913), the District Court awarded $280,000 in attorney's fees without 'consider[ing] the relationship between the extent of success and the amount of the fee award.' *Hensley, supra*, 461 U.S., at 438, 103 S.Ct., at 1941.

Although the Court of Appeals erred in failing to recognize that petitioners were prevailing parties, it correctly reversed the District Court's fee award. We accordingly affirm the judgment of the Court of Appeals.

*Farrar*, 506 U.S. at 115–16, 113 S.Ct. 566 (emphasis added).

The holding in *Farrar* that when a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief the only reasonable fee is usually no fee at all, does not apply to the instant case. Contrary to *Farrar*, in the case at bar the plaintiff proved all the elements of his claim against co-defendant Rafael Martínez. The jury in the instant case found that Batista proved the essential elements of his claims under Section 1983 against said co-defendant, namely, that Martínez violated Batista's constitutional rights under color of state law and that Martínez's actions were the proximate cause of the damages suffered by Batista. Instead of nominal damages, Batista was awarded compensatory and economic damages. Said damages did not result from a "technicality" but from the jury's own assessments of the damages suffered by Batista. Thus *Farrar* does not bar plaintiff's request for attorney's fees.

■ Co-defendant Rafael Martínez also asserts as additional grounds for opposing the request for attorney's fees that no special skills were involved in the case at bar and that the amount of work as reported in the time sheets submitted by plaintiff's attorneys is excessive. Docket No. 128. As a matter of fact, this case presented no extraordinary legal or procedural complexity. As such, the court agrees in that no special skills were required from the attorney's involved in the litigation of this case. This, however, does not mean that plaintiff is not entitled to attorney's fees; the degree of complexity of this case and the skills required are only some of

the considerations that may lead the court to adjust said fees upward or downward. *See Hensley,* 461 U.S. at 434, 103 S.Ct. 1933.

█ As to whether the amount of work as reported in the time sheets is excessive, co-defendant Rafael Martínez does not point to any specific time entry that is allegedly excessive. Notwithstanding, the court finds that some of plaintiff's billing entries are indeed excessive for the work performed in those particular instances. For example, plaintiff's attorneys charge 2.30 hours for printing the complaint and preparing the summons, the category sheet and the cover sheet. Docket No. 125, Exhibit 1 (Time Sheets, page 2, entry dated 12/31/02). The amount charged by plaintiff's attorneys is excessive considering that the complaint consists of sixteen pages, that it does not contain exhibits, and that there were only three summons to prepare and that the category and cover sheets are single-page documents that only take a few minutes to fill out. Furthermore, printing the complaint and the attachments is a task of a clerical nature that could have been easily performed by a paralegal or a secretary. *See Lipsett,* 975 F.2d at 940("clerical or secretarial tasks ought not to be billed at lawyers' rates, even if a lawyer performs them.").

█ On another occasion, plaintiff's attorneys charged 1.30 hours spent on reviewing an order issued by the court on October 2, 2003. Docket No. 125, Exhibit 1 (Time Sheets, page 4, entry dated 10/03/03). The text of the order consist of one single sentence: "The initial scheduling conference is hereby set for **Tuesday,** **October 21, 2003, at 4:30 p.m.** before the undersigned." *See* Docket No. 17 (bold in original). To charge 1.30 hours for reviewing a single-sentence order is excessive and has to be reduced.[4] Following the lodestar approach, the court will first set the hourly rate for plaintiff's attorneys and will then make the necessary adjustments or deductions in the amount of time charged by plaintiff's attorneys in these and other entries that are excessive.

### 2. Lodestar

### a. Hourly rate

█ The lodestar method requires that the hourly rate used by the court be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Tejada–Batista,* 263 F.Supp.2d at 327 (quoting *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). "In reaching its determination, the court may rely upon its own knowledge of attorneys' fees in the community." *Rodríguez v. International College of Business and Technology, Inc.,* 356 F.Supp.2d 92, 96 (D.P.R.2005) (*citing Missouri v. Jenkins by Agyei,* 491 U.S. 274, 285, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989)).

█ Courts may award different rates depending on whether the time was invested in-court or out of court. *See Latin American Music Co., Inc. v. Archdiocese of San Juan of the Roman,* 488 F.Supp.2d 33 (D.P.R.2007) (awarding $100.00 per hour for in-court time and $90.00 per hour for out-of-court time, even though attor-

---

**4.** Plaintiff's attorneys ambiguously describe the labor performed with respect to this time entry (and with respect to many other entries as well) as "Study of Court Order, schedule and file of the case." Docket No. 125, Exhibit 1 (Time Sheets, page 4, entry dated 10/03/03). Even if the court were to consider that said description is not ambiguous, the court finds that the amount charged by plaintiff's attorneys for performing those tasks is still excessive.

ney's rate set forth in the fee application was $150.00 per hour of work); *Ciudadana v. Gracia–Morales,* 359 F.Supp.2d 38, 45 (D.P.R.2005) (finding rates of $200.00 an hour for out-of-court work and $225.00 an hour in-court work justified); *Rodríguez v. International College of Business and Technology, Inc.,* 356 F.Supp.2d 92, 96–97 (finding rate of $190 and $125 to be appropriate); *Top Entertainment Corp. v. Torrejon,* 349 F.Supp.2d 248, 253–255 (D.P.R. 2004) (finding hourly rate of $125.00 reasonable); *Anywhere, Inc. v. Romero,* 344 F.Supp.2d 345, 348 (D.P.R.2004) (finding that an hourly rate of $250.00 for the more experienced attorney and of $150.00 for the less experienced attorneys reasonable); *Vieques Conservation and Historical Trust, Inc. v. Martínez,* 313 F.Supp.2d 40, 47 (D.P.R.2004) (reducing attorney's hourly rate to $225 to equate with local rates); *Rodríguez Sostre v. Municipio De Canóvanas,* 251 F.Supp.2d 1055, 1058 (D.P.R. 2003) (awarding $225.00 to $250.00 for in-court time and $200.00 for out-of-court time); *Tejada–Batista,* 263 F.Supp.2d at 328 (holding that a rate of $175.00 for in-court time and $150.00 for out-of-court time is reasonable); *Sepúlveda–Carrero v. Rullán,* 2005 WL 1949775 *2 (D.P.R.) (finding an hourly rate of $111 to $115 for in-court time and $90 for out-of-court time reasonable in light of the prevailing rates in the community).

 Plaintiff's attorneys, Francisco R. González–Colón and Francisco J. González–Magaz, attached a statement of legal fees to the petition for attorney's fees detailing the time spent on the different tasks related to the case at bar. They also included separate statements under penal-

ty of perjury to support said petition detailing their professional background. According to the statement of legal fees, both attorneys spent a combined total of 315.65 hours, of which 282.35 hours correspond to time invested in performing out-of-court work, and the remaining 33.30 hours correspond to time invested in performing in-court work.[5] Both attorneys also charge the same hourly rate: $200.00 per hour of in-court work and $150.00 per hour of out-of court work. Docket No. 125, Exhibit 1 (Time Sheets).

A review of the statement submitted by Atty. González–Colón shows that he is admitted to practice law before the courts of the Commonwealth of Puerto Rico, the U.S. District Court for the District of Puerto Rico, the U.S. Court of Appeals for the First Circuit, the Court of Federal Claims and the U.S. Supreme Court. Docket No. 125, Exhibit 3 (González–Colón's Statement Under Penalty of Perjury, ¶ 2). Throughout his thirty-seven years practicing law in this court he has litigated Section 1983 cases, such as *Cortés–Reyes, et al., v. Salas–Quintana,* Civil No. 02–1129(SEC), and *Rodríguez–Marín, et al., v. Rivera–González, et al.,* 438 F.3d 72 (1st Cir.2006). Docket No. 125, Exhibit 3 (González–Colón's Statement Under Penalty of Perjury, ¶¶ 4, 5).

A review of the statement submitted by Atty. González–Magaz shows that he obtained his law degree from the University of Puerto Rico School of Law in 2005 and that he is admitted to practice law before the courts of the Commonwealth of Puerto Rico, the U.S. District Court for the District of Puerto Rico and the U.S. Court of Appeals for the First Circuit. Docket No.

---

5. In the statements, however, plaintiff's attorneys claim to have spent 336.75 hours, of which 303.45 hours are for out-of court work and the remaining 33.3 hours are for in-court work. See Docket No. 125, Exhibit 1 (Time Sheets). However, adding the number of hours reported in the time sheets does not yield the results provided by plaintiff's attorneys.

125, Exhibit 2 (González–Magaz's Statement Under Penalty of Perjury, ¶¶ 3, 4). From October 2005 to September 2006, he worked as an associate attorney at the Litigation Division of the law firm of McConnell Valdés, LLP. On September 2006, he joined the F.R. González Law Office, where he concentrates mostly on litigation of Section 1983 claims before this court. Along with González–Colón, he litigated the case of *Cortés–Reyes, et al., v. Salas–Quintana,* Civil No. 02–1129(SEC).

That information notwithstanding, plaintiff's attorneys failed to provide evidence, such as affidavits, pertaining to the prevailing rate in the community. *Top Entertainment Corp.,* 349 F.Supp.2d at 254 ("In other words, a party seeking attorneys' fees is required to present evidence other than the attorney's own affidavits regarding the prevailing hourly rate. To this end, it would have been more helpful to the Court if [defendant's counsel] had filed affidavits from other attorneys indicating whether his requested rates were comparable to those charged by themselves and whether or not they were reasonable, instead of an affidavit merely outlining [his own] relevant experience.") (internal citations omitted). In reaching its determination, the court will thus rely upon its own knowledge of attorneys' fees in the community. Insofar Atty. González–Colón has more years of experience than Atty. González–Magaz, the court will set Atty. González–Colón's rate at $150.00 per hour of in-court work and $125.00 per hour of out-of-court work, while Atty. González–Magaz's rate will be set at $100.00 per hour of in-court work and $90.00 per hour of out-of-court work.

▉ Furthermore, inasmuch as the time sheets submitted by plaintiff's attorneys do not specify which attorney performed each of the tasks and work reported therein, the court will apply Atty. González–Colón's rate to all the worked performed before Atty. González–Magaz first appeared in this case through the "Motion in compliance with court order regarding documentary evidence", filed on May 8, 2007. *See* Docket No. 88. The court will apply Atty. González–Magaz's rate for all the work performed after May 8, 2007, except for Atty. González–Colón's appearance to the pre-trial conference held on July 19, 2007, to which the court will apply said attorney's rate. *See* Docket No. 105.[6]

### b. Time spent performing the various legal tasks.

According to the time sheets provided by plaintiff's attorneys, they spent 315.65 hours performing work related to the case at bar, of which 282.35 hours are for out-of-court time and 33.3 hours are for in-court time.

### 1. Out-of court work performed before May 8, 2007.

▉ Of the 282.35 hours of out-of-court work, 199.55 hours correspond to work performed before May 8, 2007. *See* Docket No. 125, Exhibit 1 (Time Sheets). After reviewing the time sheets submitted by plaintiff's attorneys, the court determines that the time charged for the work performed as described in many of the entries reported therein is either excessive, redundant or otherwise unnecessary. The court's findings of excessive or duplicative

---

**6.** The court also notes that, other than being present in court (*see* Docket No. 111), Atty. González–Colón had no participation during the first day of trial on July 30, 2007, and that he was not present in court for the remainder of the trial. Thus, the court will apply Atty. González–Magaz's in-court rate of $100.00 per hour of trial.

hours and calculations are depicted in the table below:

| Billing date | Work performed | Amount billed reduced by (in hours) | Reason for reduction |
|---|---|---|---|
| 12/19/02 | Reviewing–Copying Documents | –1.30 | Excessive. *See also Lipsett,* 975 F.2d at 940("clerical or secretarial tasks ought not to be billed at lawyers' rates, even if a lawyer performs them.") |
| 12/23/02 | Study the Personnel Law, evidence and drafting the complaint | –1.30 | Excessive |
| 12/27/02 | Revision of the complaint and documents | –1.00 | Excessive |
| 12/28/02 | Study the Personnel Law, evidence and drafting the complaint | –3.00 | Duplicative. *See* entry of 12/23/02. |
| 12/30/02 | Additions and revision of the complaint and signing the statement under penalty of perjury | –1.15 | Excessive |
| 12/31/02 | Printing the complaint and attachments. Preparation of the summons, category sheet and cover sheet. | –2.30 | Excessive. *See also Lipsett,* 975 F.2d at 940. |
| 01/04/03 | Reviewing summons | –0.20 | Excessive |
| 04/14/03 | Review order and coordinating summons | –1.65 | Excessive |
| 04/17/03 | Study and preparation of motion and filing of summons | –2.5 | Excessive |
| 04/21/03 | Filing of motion | –0.75 | Excessive |
| 04/21/03 | Filing of summons | –0.15 | Excessive. *See also Lipsett,* 975 F.2d at 940 |
| 04/21/03 | Filing of summons | –0.15 | Excessive. *See also Lipsett,* 975 F.2d at 940 |
| 04/21/03 | Filing of summons | –0.15 | Excessive. *See also Lipsett,* 975 F.2d at 940 |
| 05/29/03 | Drafting and filing of motion | –1.50 | Excessive |

| | | | |
|---|---|---|---|
| 06/02/03 | Study of entry [of default order] and file of the case | –0.15 | Excessive |
| 06/11/03 | Study of the file and court order | –0.75 | Excessive |
| 06/11/03 | Study of court order and file of the case | –0.75 | Excessive |
| 06/18/03 | Study of the file and court order | –0.15 | Excessive |
| —/—/03 | Study answer to the complaint and file of the case | –1.30 | Excessive |
| 07/31/03 | Study of case management order, schedule and file of the case | –1.00 | Excessive |
| 10/03/03 | Study of court order, schedule and file of the case | –1.05 | Excessive |
| 10/23/03 | Study of court order, schedule and file of the case | –1.05 | Excessive |
| 10/30/03 | Drafting of motion report | –1.00 | Excessive |
| 11/22/03 | Study and update of docket and file. | –1.75 | Excessive |
| 12/12/03 | Study of the file and court order | –1.15 | Excessive |
| 12/15/03 | Drafting and filing of [informative] motion | –1.75 | Excessive |
| 12/16/03 | Study of the file and defendants' [informative] motion | –1.75 | Excessive |
| 12/17/03 | Drafting and filing of motion | –1.00 | Excessive |
| 12/26/03 | Study of answers to plaintiff's first set of interrogatories and request for proposal of documents | –2.30 | Excessive |
| 01/17/04 | Study and update of docket and file | –0.75 | Excessive |
| 01/23/04 | Study court order | –0.20 | Excessive |
| 02/28/04 | Study and update of docket and file | –0.75 | Excessive |
| 04/17/04 | Study and update of docket and file | –0.75 | Excessive |
| 05/22/04 | Study and update of docket and file | –0.75 | Excessive |

| | | | |
|---|---|---|---|
| 06/07/04 | Study motion and file of the case | –0.75 | Excessive |
| —/—/04 | Study court order, schedule and file of the case | –0.15 | Excessive |
| —/—/— | Study and update of docket and file | –0.75 | Excessive |
| 07/27/04 | Study court order, schedule and file of the case | –0.15 | Excessive |
| 09/24/04 | Study court order, schedule and file of the case | –1.00 | Excessive |
| 09/24/04 | Study partial order | –1.05 | Excessive and duplicative |
| 09/25/04 | Study and update of docket and file | –1.05 | Excessive |
| 10/13/04 | Study court order | –0.15 | Excessive |
| 10/23/04 | Study and update of docket and file | –0.15 | Excessive |
| 11/10/04 | Study motion and file of the case | –0.15 | Excessive |
| 11/12/04 | Drafting and filing of motion | –0.75 | Excessive |
| 11/17/04 | Study court order | –0.75 | Excessive |
| 12/01/04 | Study motion and file of the case | –0.75 | Excessive |
| 12/04/04 | Study and update of docket and file | –0.75 | Excessive |
| 12/28/04 | Study minute, file of the case and coordinating meeting with plaintiff | –0.75 | Excessive |
| 12/29/04 | Study motion | –0.15 | Excessive |
| 12/30/04 | Study court order | –0.15 | Excessive |
| 01/11/05 | Study court order, schedule and file of the case | –0.15 | Excessive |
| 01/25/05 | Conference, coordinating, drafting and filing pretrial order | –1.30 | Excessive |
| 01/28/05 | Study [minute] entry | –0.15 | Excessive |
| 02/01/05 | Attendance to pre-trial conference | –1.50 | Excessive. The pretrial conference lasted 1.5 hours. *See* Docket No. 42. |

| | | | |
|---|---|---|---|
| —/—/—/ | Study court order, schedule and file of the case | –0.15 | Excessive |
| 02/18/05 | Study motion and file of the case | –0.15 | Excessive |
| 02/22/05 | Study court order | –0.15 | Excessive |
| 02/24/05 | Drafting final version of proposed amended pretrial order | –3.00 | Excessive |
| 02/28/05 | Study motion and file of the case | –0.15 | Excessive |
| 03/02/05 | Attendance to pre-trial conference | –0.33 | Excessive. The pre-trial conference lasted approximately 40 minutes. *See* Docket No. 47. |
| 03/02/05 | Study consent form and file of the case | –0.30 | Excessive and duplicative |
| 03/12/05 | Study consent form and file of the case | –0.15 | Excessive and duplicative |
| 03/18/05 | Study consent form and file of the case | –0.15 | Excessive and duplicative |
| 04/16/05 | Study court order | –0.15 | Excessive |
| —/—/— | Study court order | –0.15 | Excessive |
| 05/06/05 | Study court order | –0.15 | Excessive |
| 05/10/05 | Study court order and schedule | –0.15 | Excessive |
| 05/13/05 | Study court order and schedule | –0.15 | Excessive |
| 05/19/05 | Study court order and schedule | –0.75 | Excessive |
| ?/?/05 | Drafting and filing of motion | –0.20 | Excessive |
| 09/01/05 | Study of court order, schedule and file of the case | –0.15 | Excessive |
| 12/21/05 | Study motion and file of the case | –0.75 | Excessive |
| 01/12/06 | Study motion and file of the case | –0.15 | Excessive |
| 01/13/06 | Study motion and file of the case | –0.15 | Excessive |
| 03/13/06 | Study motion and file of the case | –0.15 | Excessive |

| 04/11/06 | Study motion and file of the case | −0.15 | Excessive |
|---|---|---|---|
| 06/22/06 | Drafting and filing of motion | −0.75 | Excessive |
| 11/17/06 | Study motion and file of the case | −0.15 | Excessive |
| 01/18/07 | Study court order and schedule | −0.15 | Excessive |
| 04/16/07 | Study court order, schedule and file of the case | −1.05 | Excessive |
| 04/17/07 | Study motion and file of the case | −0.15 | Excessive |
| 04/17/07 | Study motion | −0.15 | Excessive |
| 04/30/07 | Study court order, schedule and file of the case | −0.15 | Excessive |
| 04/30/07 | Study court order, schedule and file of the case | −1.05 | Excessive |
| 05/01/07 | Study court order, schedule and file of the case | −0.15 | Excessive |
| 04/30/07 | Study court order | −0.15 | Excessive |

**Total hours deducted** **−61.33**

Thus, the court will deduct 61.33 hours from the 199.55 hours that the plaintiff's attorneys claim to have spent on work performed before May, 8, 2007. Thus, the adjusted tally is 138.22 billable hours. At Atty. González–Colón's rate of $125.00 per hour, the final calculation of attorney's fees for said work yields **$17,277.50.**

**2. Out-of-court work performed on and after May 8, 2007.**

Of the 282.35 hours of out-of-court work, 82.80 hours correspond to work performed after May 8, 2007. *See* Docket No. 125, Exhibit 1 (Time Sheets). After reviewing the time sheets submitted by plaintiff's attorneys, the court determines that the time charged for the work performed as described in many of the entries reported therein is either excessive, redundant or otherwise unnecessary. The court's findings of excessive or duplicative hours and calculations are depicted in the table below:

| Billing date | Work performed | Amount billed reduced by (in hours) | Reason for reduction |
|---|---|---|---|
| 05/08/07 | Drafting and filing motion | − 1.00 | Excessive. |
| 05/09/07 | Study of court order and file of the case | − 0.15 | Excessive |
| 05/09/07 | Study motion and file of the case | − 0.30 | Excessive |

| | | | |
|---|---|---|---|
| 05/21/07 | Drafting and filing motion | – 1.05 | Excessive |
| 05/28/07 | Drafting and filing motion | – 1.30 | Excessive |
| 05/30/07 | Study court order, schedule and file of the case | – 0.15 | Excessive |
| 06/06/07 | Study court order and schedule | – 1.00 | Excessive |
| 06/15/07 | Drafting and filing motion | – 0.50 | Excessive |
| 06/18/07 | Study court order and schedule | – 0.15 | Excessive |
| 06/21/07 | Study court order, schedule and file of the case | – 0.15 | Excessive |
| 06/29/07 | Drafting and filing of motion | – 1.20 | Excessive |
| 07/05/07 | Study jury instructions and file of the case | – 0.45 | Excessive |
| 07/17/07 | Study motion and file of the case | – 0.15 | Excessive |
| 07/17/07 | Drafting and filing motion | – 1.30 | Excessive |
| 07/17/07 | Drafting and filing motion | – 0.30 | Excessive |
| 07/17/07 | Study motion | – 0.45 | Excessive |
| 07/17/07 | Study motion and file of the case | – 0.65 | Excessive |
| 07/19/07 | Study minutes | – 0.15 | Excessive |
| 07/23/07 | Drafting and filing motion | – 1.00 | Excessive |
| 07/24/07 | Study court order and file of the case | – 0.15 | Excessive |
| 07/26/07 | Drafting and filing motions | – 1.05 | Excessive |
| 07/27/07 | Study court order and file of the case, preparation and organization for trial | – 1.30 | Excessive |
| 08/03/07 | Study jury notes | – 0.30 | Excessive |
| | **Total hours deducted** | **–14.20** | |

Thus, the court will deduct 14.20 hours from the 82.80 hours that the plaintiff's attorneys claim to have spent on work performed on or after May, 8, 2007. Thus, the adjusted tally is 68.60 billable hours.

At Atty. González–Magaz's rate of $90.00 per hour (except for two hours that Atty. González–Colón charges for his appearance to the pretrial conference held on July 19, 2007, which will be awarded at his rate of $125.00 per hour of out-of-court work), the final calculation of attorney's fees for said work yields $6,244.00.

### 3. In-court work.

Finally, plaintiff's attorneys claim they spent 33.3 hours of in-court work during the trial in the case at bar. The court determines that this amount is reasonable and will make no deductions to the same. At Atty. González–Magaz's rate of $100.00 per hour, the final calculation of attorney's fees for said work yields $3,330.00.

### 4. Total award of attorney's fees to plaintiff's attorneys.

The out-of-court plus in-court subtotal of attorney's fees yields $26,851.50. This amount, however, needs to be adjusted downward because plaintiff did not prevail as to co-defendants Gladys González and Esteban Mujica. In the billing sheets submitted, plaintiff failed to specify whether a particular task was performed as to one or all of the co-defendants. Therefore, an additional deduction of fifteen percent (15%) shall be made to the subtotal of $26,851.50.

In light of the above, the computation of the final amount of attorney's fees awarded to plaintiff's attorneys is $22,823.78. The parties have failed to present evidence of any special circumstances or consideration that warrant a further departure from this amount.

### III. Conclusion

For all the reasons set forth above, the Court GRANTS plaintiff's request for attorney's fees and awards plaintiff's attorneys the total amount of $22,823.78.

IT IS SO ORDERED.